

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 12, 2014

**By Electronic Mail**
The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
500 Pearl Street, Room 725
New York, New York 10007
E-mail:  alcarternysdchambers@nysd.uscourts.gov

> Re:   **United States v. Daryl Payton,**
>          S3 12 Cr. 887 (ALC)

Dear Judge Carter:

The Government respectfully submits this letter to address the legal sufficiency of Daryl Payton's November 6, 2014 guilty plea to conspiracy to commit insider trading, as charged in Count One of the Indictment (the "Indictment").  At the change of plea proceeding, the Court reserved decision on whether to accept the defendant's guilty plea and directed the parties to address the legal sufficiency of the plea on or before November 12, 2014.  On November 7, 2014, the Court further instructed the parties to address the Second Circuit's decisions in *United States* v. *Geibel*, 369 F.3d 682 (2d. Cir. 2004), and *United States* v. *Bastian*, No. 13-1156-cr, 2014 WL 5462420 (2d Cir. Oct. 29, 2014).

The Government has re-examined its trial proof in the days since Payton's guilty plea.  Upon further reflection, we are no longer alleging that Trent Martin conspired with the downstream tippees, David Weishaus, Benjamin Durant, and Payton.  Although Martin conspired only with Conradt, Conradt also conspired with Weishaus, Durant and Payton.  That conclusion, nonetheless, is no obstacle to accepting Payton's guilty plea.  As explained more fully below, removing Martin from the conspiracy charged in the Indictment is at most a permissible variance, as held in *Geibel*, and is not a constructive amendment to the Indictment, as held in *Bastian*.  Therefore, the parties jointly submit that Payton's plea was sufficient and respectfully urge the Court to accept it.[1]

*Geibel* sets forth the Second Circuit's test to determine whether a downstream tippee is in the same conspiracy as the tipper.  It also makes clear that, where the conspiracy is narrower than originally conceived, the question is whether the variance is harmless.  In *Geibel*, the Second

---

[1]   In advance of submitting this letter to the Court, the Government provided a copy to Payton's counsel, who has indicated his agreement with the analysis set forth herein.

Circuit concluded that it was. There, the defendants were remote tippees in an insider trading scheme in which an investment bank employee (John Freeman) repeatedly misappropriated material nonpublic information concerning impending mergers and acquisitions. Freeman then directly disclosed that information to two individuals and later gave his consent for two additional individuals to receive the information. *Geibel*, 369 F.3d at 687. However, contrary to Freeman's wishes, additional downstream tippees, including Geibel and his co-defendants, received Freeman's information. After being convicted of conspiring with Freeman and others to commit insider trading, the defendants argued on appeal that they participated in a narrow conspiracy that excluded Freeman and that the trial proof did not support the jury's verdict. *Id.* at 689.

The Second Circuit agreed and, in so concluding, articulated a four-part test to determine whether an originating tipper and certain remote tippees participate in a single conspiracy. *Geibel* instructed courts to consider: (1) the scope of the conspiratorial agreement between the tipper and immediate tippee; (2) the reasonable foreseeability that inadvertent disclosures to remote tippees were a necessary or natural consequence of the trading scheme; (3) the tipper's awareness of the remote tippees; and (4) the existence of mutual dependence among the scheme's participants. *Geibel*, 369 F.3d at 691-92. *Geibel* concluded that the "scope of the conspiratorial agreement between Freeman and [the immediate tippee] did not encompass disclosing information to remote tippees in defendants' position. Freeman neither knew of nor should have expected defendants' use of the information, and defendants' vague awareness of Freeman's role in the scheme does not render them co-conspirators." *Id.* at 692.

Nevertheless—and of critical significance here—the *Geibel* court did not disturb the defendants' convictions for conspiracy to commit insider trading. Instead, the court determined that the variance in trial proof was harmless. *See id.* at 693-95; *United States* v. *McDermott*, 277 F.3d 240, 242 (2d Cir. 2002) ("[W]hen a defendant is charged with a single conspiracy among multiple members, and the proof at trial shows that he conspired with some, but not all, of those members, the variance is subject to the harmless error rule."). Accordingly, although *Geibel* found that the defendants did not conspire with Freeman, the original tipper/misappropriator, the court concluded that the defendants nonetheless were still guilty of conspiring with a more limited group of tippees to commit the same crime.

The Second Circuit's holdings in *Geibel* and *McDermott* make plain that a variance between the proof described in the indictment and the proof offered at the time of conviction (trial or guilty plea) does not, and should not, undermine Payton's conviction on the single conspiracy charged in the Indictment. In particular, the proof of Payton's involvement in the conspiracy, as offered through his guilty plea allocution and the Government's factual proffer, was overwhelming and uncontested, and Payton has experienced absolutely no prejudice based on the variance. *See Geibel*, 369 F.3d at 693-95; *McDermott*, 277 F.3d at 242. Where a conviction is based on a narrower conspiracy than what was alleged in the indictment, courts routinely have permitted the variance after engaging in harmlessness review. *See, e.g.*, *United States* v. *Allmendinger*, 706 F.3d 330, 339-40 (4th Cir. 2013) (finding harmless variance where proof established narrower conspiracy); *United States* v. *Baugham*, 449 F.3d 167, 174 (D.C. Cir. 2006) (same); *United States* v. *Harrison*, 942 F.2d 751, 758 (10th Cir. 1991) ("A defendant's substantial rights are not prejudiced merely because the defendant is convicted upon evidence

which tends to show a narrower scheme than that contained in the indictment, provided that the narrower scheme is fully included within the indictment."); *United States* v. *Schurr*, 775 F.2d 549, 555 (3d Cir. 1985) (concluding that variance between a broad conspiracy alleged in indictment and narrow conspiracy proved at trial was neither prejudicial nor material); *United States* v. *Malik*, No. 08-614, 2009 WL 4641706, at *18 (E.D.Pa. Dec. 7, 2009) (noting that a variance is "permissible . . . if it narrows the scope of the evidence to prove an offense included in the indictment, and if the narrowing of the charge does not prejudice the defendant). In light of these authorities, it is clear that any variance in this case is permissible.

In *United States* v. *Rajaratnam*, No. 13 Cr. 211 (NRB), 2014 WL 1554078, at *10 (S.D.N.Y. Apr. 17, 2014), Judge Buchwald faced this identical issue in a motion to dismiss the indictment. The indictment initially had alleged that the tipper conspired with the defendant, who was a remote tippee. Prior to trial, the Government re-examined the evidence and clarified that the defendant was in a separate conspiracy that excluded the tipper. In response, the defendant argued that removing the tipper from an insider trading conspiracy improperly amended the indictment. In rejecting the defendant's argument, Judge Buchwald recognized that the "identity and number of conspirators [are] not elements of a conspiracy under 18 U.S.C. § 371." *Id*. Judge Buchwald went on to state that "the exact membership of an alleged conspiracy may be modified where, as here, the modification does not deprive defendant of notice of the 'core of criminality' of the offense." *Id*. Judge Buchwald concluded that the indictment's "core of criminality" remained "intact by the Government's decision to no longer consider" the tipper a co-conspirator, *id*. at 10 n.3, and stated that the indictment's reference to the tipper as a co-conspirator "falls outside the core criminal conduct" of the conspiracy, *id*. at 10.

Similarly, the Government's decision to remove Martin from the conspiracy involving Conradt, Payton and others is not an unlawful amendment of the Indictment. The narrower conspiracy relies on an identical "set of discrete facts," and does not alter the core of Payton's criminality in any way. As Judge Buchwald held in *Rajaratnam*, "[t]his is particularly true given that the Government's new position serves to narrow, rather than broaden, the scope of the conspiracy charge. *See id*. at 11 n.5 (citing *United States* v. *Khan*, 53 F.3d 507, 517 (2d Cir. 1995) ("Where the evidence or jury instructions narrow an offense that is more broadly contained in the indictment, however, the indictment is not constructively amended in violation of the Fifth Amendment.")).

As Judge Buchwald's decision makes clear, there is also no obstacle to defining an insider trading conspiracy without including the misappropriator within that conspiracy. Indeed, misappropriation cases like *Geibel* and *Rajaratnam* involved insider trading conspiracies that existed solely between immediate tippees and downstream tippees (and did not include the misappropriator). And this, of course, makes sense. It is often the case that a misappropriator of inside information (or, in a classical case, an insider) tips one subset of tippees, without foreseeing that those tippees would further disseminate the inside information. So long as the downstream tippees have knowledge that they received the material nonpublic information through an unauthorized disclosure—an element to which Payton clearly allocuted—then it follows that the tippees can conspire with one another, even in the absence of the tipper, to violate the federal securities laws. *See also United States* v. *Steinberg*, No. 12 Cr. 121 (RJS) (charging a conspiracy to commit insider trading under a classical theory where the charged

conspiracy only contained tippees and not the original insider); *United States* v. *Newman et al.*, No. S2 12 Cr. 121 (RJS) (same).

Finally, as the preceding discussion makes clear, this case—in which the parties now submit that Payton participated in a narrower conspiracy—does not implicate the constructive amendment concerns discussed in *United States* v. *Bastian*. In *Bastian*, the Second Circuit addressed the question whether a defendant's guilty plea to possess a particular firearm (a .32 caliber revolver) during and in relation to a drug trafficking crime was sufficient when the operative indictment charged him with possessing a different firearm (an Excel 20-gauge shotgun). *Bastian*, 2014 WL 5462420, at *2-3. In particular, the defendant argued that the district court "constructively amended" the grand jury's charges, requiring that his conviction be vacated. *Id.* at *4-5. The *Bastian* court disagreed, affirmed the defendant's conviction, and held that even though the defendant's plea "involved a completely different type of gun, used on different dates for different purposes and in different criminal transactions," it could not conclude that the defendant's "conviction on the basis of a different weapon plainly violated his right" to be indicted on the different firearm. *Id.* at *20-21.

As the court in *Bastian* stated, a constructive amendment occurs where the actions of the court "broaden the possible bases for conviction from that which appeared in the indictment." *Id.* at *12 (quoting *United States* v. *Banki*, 685 F.3d 99, 118 (2d Cir. 2011), as amended (Feb. 22, 2012) (internal quotation marks omitted)); *see also United States* v. *Friesel*, 224 F.3d 107, 117 (2d Cir. 2000) (commenting that "constructive amendment is typically found where the government offers proof of offenses or transactions not even mentioned in the indictment"). Put another way, to be considered a constructive amendment, an essential element of the charge must have been altered in such a way that "'it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment.'" *Id.* (quoting *United States* v. *Rigas*, 490 F.3d 208, 227 (2d Cir. 2007)). A constructive amendment occurs where the Government introduces proof of "a complex of facts distinctly different from that" charged by the grand jury, not where it merely amends details pertaining to "a single set of discrete facts" set forth in the indictment. *Id.* at *20 (quoting *United States* v. *D'Amelio*, 683 F.3d 412, 419 (2d Cir. 2012)). "The 'core of criminality' of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." *D'Amelio*, 683 F.3d at 418.

The reclassification of Martin's status does not alter the core of Payton's criminality at all. *See, e.g.*, *United States* v. *Delano*, 55 F.3d 720, 729 (2d Cir. 1998) (recognizing that the Second Circuit has "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial"). Indeed, without Martin, the narrower conspiracy in which Payton participated is based on the same co-conspirators, underlying facts, and transactions that are contained in the Indictment. Accordingly, there is no legal or factual basis to conclude that there has been a constructive amendment. *See Friesel*, 224 F.3d at 117.

In sum, the parties respectfully submit that removing Martin from the conspiracy charged in the Indictment is at most a permissible variance, as held in *Geibel*, and is not a constructive amendment to the Indictment, as held in *Bastian*, and that the Court accordingly should accept Payton's guilty plea as legally and factually sufficient.[2]

        Respectfully submitted,

        PREET BHARARA
        United States Attorney

By:  //s//_____
     Jessica Masella
     Andrew Bauer
     Damian Williams
     Assistant United States Attorneys
     (212) 637-2288/2354/2298

cc:    Defense Counsel
      (By ECF and Electronic Mail)

---

[2] In advance of the December 8, 2014 trial of Payton's co-defendant, Benjamin Durant, the Government intends to supersede the indictment to clarify that Martin is not in the same conspiracy as Durant. The clarification will remedy any confusion in the event the Court intends to send the indictment back to the jury during its deliberations.